Bee HER, by his parents and natural guardians, Pha HER and Tang Tao, Petitioners,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 91–1447V.

United States Court of Federal Claims.

May 25, 1995.

Jeffrey D. Thill, Minneapolis, MN, for petitioners.

Mark W. Rogers, with whom were Asst. Atty. Gen. Frank W. Hunger, Helene M. Goldberg, Director, and Gerard W. Fischer, Asst. Director, Washington, DC, for respondent.

## OPINIONS

ANDEWELT, Judge.

### I.

In this action, petitioners, Pha Her and Tang Tao, seek compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 to –34 (the Vaccine Act), for the death of their son, Bee Her. Petitioners allege that the April 18, 1990, administration of an MMR (Measles, Mumps, and Rubella) vaccination caused their son's death. On January 23, 1995, the special master issued an order dismissing the petition. Pursuant to 42 U.S.C. § 12(e)(1), petitioners filed a motion in this court seeking review of the special master's decision, but that motion did not reach the clerk of this court until February 23, 1995, one day beyond the 30–day statutory time period. This action is presently before the court on respondent's motion to dismiss for lack of jurisdiction on the ground that petitioners' motion for review is untimely.

Section 12(e)(1) of the Vaccine Act provides, in pertinent part: "Upon issuance of the special master's decision, the parties shall have 30 days to file with the clerk of the United States Court of Federal Claims a motion to have the court review the decision." In *Raspberry v. Secretary, HHS*, 32 Fed.Cl. 777 (1995), this court concluded that the 30–day statutory time period is subject to the doctrine of equitable tolling. In its motion to dismiss, respondent argues that the

Section 12(e)(1) period is not subject to equitable tolling and, in any event, that the material facts of the instant case do not support the application of equitable tolling.

## II.

■ As explained in *Raspberry, id.* at 779, the Supreme Court in *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990), concluded that there is a presumption that equitable tolling is available in suits against the federal government. Such a presumption is overcome when the statutory scheme demonstrates that Congress intended the time period specified in the statute to be absolute and not subject to tolling. *Id.*

■ In its motion to dismiss, respondent relies upon Section 12(e)(3) to support its contention that Congress intended the 30–day period in Section 12(e)(1) to be absolute and not subject to equitable tolling. Section 12(e)(3) provides: "In the absence of a motion under paragraph (1) respecting the special master's decision ... the clerk of the United States Court of Federal Claims shall immediately enter judgment in accordance with the special master's decision." Respondent argues that by mandating an immediate entry of judgment upon expiration of the 30–day deadline, Congress demonstrated its intent to set the period for filing a motion for review of a special master's decision at 30 days and no more.

But, as this court explained in *Raspberry,* Congress' inclusion of provisions in the Vaccine Act that encourage expedited resolution of Vaccine Act petitions demonstrates an intent to promote petitioners' interests rather than to limit petitioners' ability to secure compensation for vaccine-related injuries. This court explained, as follows:

The Vaccine Act restricts petitioners in certain circumstances from instituting private suits against vaccine manufacturers or administrators unless the petitioners first file a petition under the Vaccine Act and secure a judgment on that petition from this court. Congress' focus on expedited resolution of Vaccine Act petitions therefore benefits petitioners because the quicker their petitions are resolved, the quicker

the petitioners can proceed with any still-viable, third-party actions. 42 U.S.C. § 300aa–21(a) and (c). Congress' intent to so benefit petitioners by providing for expedited proceedings is apparent from the following statement in the pertinent House Report: "[M]uch of the equity in limiting compensation and limiting other remedies arises from the speed and reliability with which the petitioner can expect judgment; without such quick and certain conclusion of proceedings, the compensation system would work an injustice upon the petitioner." H.R.Rep. No. 908, 99th Cong., 2d Sess., pt. 1 at 17 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6358.

32 Fed.Cl. at 780–81 (footnote omitted). In this setting, it is apparent that Congress' mandate that the clerk of this court "immediately enter judgment" if a petitioner does not file a motion for review within 30 days of the special master's decision is not intended to limit a petitioner's options by precluding resort to equitable tolling. Rather, Congress sought instead to foster petitioners' ability to secure compensation for vaccine-related injuries by "immediately" removing a statutory bar that otherwise could prevent a petitioner, who has determined not to seek review of an adverse special master decision, from instituting damage actions against the vaccine manufacturer or administrator.

## III.

As an alternative to its statutory construction argument, respondent contends that *Widdoss v. Secretary, HHS,* 989 F.2d 1170 (Fed.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 381, 126 L.Ed.2d 331 (1993), which is controlling precedent, precludes equitable tolling of the 30–day time period in Section 12(e)(1). In *Raspberry,* this court distinguished *Widdoss* as follows:

Like the instant case, *Widdoss* involved a motion for review delivered to the clerk of this court one day beyond the 30–day statutory time period. But because the majority opinion neither raised nor addressed equitable tolling or the Supreme Court's holding in *Irwin,* it appears that the petitioner in *Widdoss* did not contend that the facts leading to the untimely filing consti-

tuted grounds for equitable tolling. Indeed, the majority opinion viewed the issue before it as whether the court had the authority to *waive* rather than *toll* the 30-day period in Section 12(e)(1). *Widdoss,* 989 F.2d at 1172 (defining the issue before it as "whether the 30-day period ... is jurisdictional; and ... whether the [Court of Federal Claims] has the authority to waive compliance with the 30-day period through use of its rules of procedure"). The Federal Circuit concluded that the 30-day period is jurisdictional and, thus, that this court lacks the authority to waive a jurisdictional prerequisite.

There is a crucial distinction between a court waiving a jurisdictional time limitation, an act *Widdoss* explains Congress forbids, and a court applying the doctrine of equitable tolling, an act *Irwin* explains Congress presumptively allows. The Court of Appeals for the Federal Circuit explained this crucial distinction in its post-*Widdoss* decision in *Bath Iron Works Corp. v. United States,* 20 F.3d 1567, 1572 n. 2 (Fed.Cir.1994), as follows:

> The language in *Irwin* that the time limit may be tollable can be reconciled with the ... holding[] that these statutes of limitations are jurisdictional. Tolling is not the same as waiving. Presumably, therefore, *Irwin* merely holds that those time limits, while jurisdictional, can be equitably tolled in certain circumstances.

Because *Widdoss* addressed waiving rather than tolling the 30-day statutory time period in Section 12(e)(1), *Widdoss* does not control here.

32 Fed.Cl. at 781.

Respondent contends that "the equitable doctrines of waiver and tolling are routinely lumped together" and therefore, in effect, that this court should interpret the reference in *Widdoss* to waiving as also encompassing tolling. But as noted above, in *Bath Iron Works* the Federal Circuit recognized that waiving a jurisdictional time limitation and applying the doctrine of equitable tolling are distinct legal concepts ("not the same"). Hence, to adopt respondent's argument that the *Widdoss* majority intended its reference

to waiver to encompass equitable tolling, this court would have to conclude that the *Widdoss* majority either ignored the distinction between a waiver and equitable tolling or, in the alternative, simply failed to choose its words carefully. Respondent has offered no compelling rationale for this court to reach either conclusion. The appropriate interpretation of *Widdoss* is that the majority chose its words carefully and meant specifically what it said, *i.e.,* the court addressed the issue of waiving the 30-day time period in Section 12(e)(1) and did not address the application of the distinct doctrine of equitable tolling.

## IV.

In *Raspberry,* this court articulated the following standard for applying equitable tolling:

> A determination as to whether facts support equitable tolling must be made on a case-by-case basis. *Scholar v. Pacific Bell,* 963 F.2d 264 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992). In making such a determination, courts have invoked equitable tolling sparingly to protect statutory deadlines from becoming blurred and unreliable. As the Supreme Court explained in *Irwin,* "the principles of equitable tolling ... do not extend to ... a garden variety claim of excusable neglect," and "[courts] have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin,* 498 U.S. at 96, 111 S.Ct. at 458 (citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984)).

32 Fed.Cl. at 782. Like the instant case, *Raspberry* involved the filing of a motion for review one day beyond the 30-day statutory period in Section 12(e)(1). In *Raspberry,* the court applied equitable tolling where the petitioner, *inter alia,* drafted a comprehensive motion for review and, two days before the expiration of the 30-day statutory period, sent the completed motion to the clerk of this court via an established courier that guaranteed overnight delivery. Petitioners in the

instant case argue that their situation is analogous to the situation in *Raspberry.* Upon review of the facts, however, the court disagrees.

█ The crux of petitioners' argument is that they acted diligently and that the delay in filing was beyond their control. Petitioners contend that they did not receive a copy of the transcript of the proceedings before the special master until February 20, 1995, two days before expiration of the 30–day statutory period, and that upon receipt of the transcript, counsel diligently drafted the motion for review and arranged for an established carrier service to deliver the motion to this court. Petitioners contend that the delivery service, Adcom Express Worldwide Air Transportation Services (Adcom Express), guaranteed delivery of the motion on February 22, 1995, the last day of the statutory time period, but then failed to live up to its guarantee. The factual details as presented in affidavits submitted by the parties, however, do not support petitioners' assertion that they were victims of circumstances beyond their control.

As to petitioners not securing a copy of the transcript until February 20, 1995, the affidavits indicate that by January 26, 1995, petitioners were aware that the transcript was available. Petitioners failed, however, to deliver payment to the reporting service for a copy of the transcript until 18 days later, on February 13, 1995. Moreover, when petitioners delivered payment, they did not request expedited delivery of the transcript. As a result, the reporting service sent the transcript to petitioners on February 14, 1995, the day after receiving payment, via UPS (ground), rather than next-day service. Under these circumstances, the court cannot conclude that petitioners' failure to receive the transcript until February 20, 1995, two days before expiration of the 30–day statutory time period, was the result of an unpredictable or unpreventable event. Instead, the delay was the result of petitioners' failure to pay for the transcript at an earlier date and, in addition, their failure to arrange for expedited delivery.

Next, petitioners' actions subsequent to receipt of the transcript similarly demonstrate a failure to exercise an appropriate level of concern regarding the impending statutory filing deadline. Counsel for petitioners signed the motion for review on February 21, 1995, but did not telephone Adcom Express to inquire about delivery service until noon on February 22, 1995, the very last day Section 12(e)(1) allowed for filing the motion in Washington, D.C. Petitioners' counsel, located in Minnesota, had not previously used Adcom Express for same-day delivery services. In the noon telephone conversation, an Adcom Express employee informed petitioners' counsel that Adcom Express offered NFO (next flight out) service throughout the day which would place the delivery on the next commercial flight out of Minneapolis to Washington National Airport. The Adcom Express employee informed petitioners' counsel that the last flight to Washington, D.C., that would meet the midnight delivery deadline was scheduled for 6:15 p.m., and that to make that flight, the package would have to be ready for pick up no later than 4:30 p.m.

At 2:30 p.m., less than 12 hours before expiration of the 30–day statutory period, petitioners' counsel again telephoned Adcom Express and for the first time requested pick up of the package for delivery to this court. The affidavits offer differing recollections as to the details of this 2:30 p.m. conversation. Petitioners' counsel states that his representative requested immediate pick up of the package. In contrast, the Adcom Express representative states that had he received such a request, he would have sent a courier immediately, but instead, petitioners' counsel requested a 4:30 p.m. pick up. Ultimately, Adcom Express picked up the package at 5:00 p.m. As the result of traffic delays, petitioners' motion for review did not make the 6:15 p.m. flight to Washington, D.C.

Petitioners argue that during their initial conversation with Adcom Express, the Adcom representative told them that if petitioners utilized the NFO service, the only way petitioners' package would not arrive on time was "if the plane went down." But even assuming the Adcom representative made that statement, petitioners' reliance upon such a statement simply is not reasonable.

Anyone with a modicum of experience with modern airports and commercial flights would appreciate that there are many potential sources of delay, each far more likely to occur than a plane crash, that could prevent a package, ready in the afternoon for pick up at a Minnesota office, from being delivered on that same day to an addressee in Washington, D.C. Delays can occur, *inter alia,* in the course of the delivery service's pick up of the package, the transportation to the airport, the departure of the airplane, the arrival of the airplane in Washington, the transfer of the package from the airport to the delivery service in Washington, and the final delivery of the package to the addressee.

Based on the totality of the facts presented in the affidavits, the court concludes that petitioners failed to proceed with due diligence in attempting to meet the 30-day statutory deadline in Section 12(e)(1). Petitioners' failure to secure a copy of the transcript at an earlier date, combined with their reliance on same-day, "next flight out" delivery, created a significant and foreseeable risk that petitioners' motion would not be delivered to this court within the 30-day statutory period. Equitable tolling is relief that is provided only "sparingly." *Gilbert v. Secretary, HHS,* 51 F.3d 254, 257 (Fed.Cir.1995) (citing *Irwin,* 498 U.S. at 96, 111 S.Ct. at 457). This court will not invoke such relief to permit petitioners to avoid the reasonably foreseeable consequences of their risk-laden actions.

*Conclusion*

For the reasons set forth above, respondent's motion to dismiss for lack of jurisdiction is granted. No costs.

IT IS SO ORDERED.